## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID CHMIEL, | : | |
| | : | Chief Judge Kane |
| Petitioner, | : | |
| | : | No. 1:06-CV-02098 |
| v. | : | |
| | : | |
| JOHN E. WETZEL, Commissioner, et al., | : | **THIS IS A CAPITAL CASE** |
| | : | |
| Respondents. | : | |
| | : | |

## MOTION FOR DISCOVERY
## AND CONSOLIDATED BRIEF IN SUPPORT

Petitioner, David Chmiel, through undersigned counsel, respectfully submits this Motion for Discovery, pursuant to Rule 6 of the Rules Governing Habeas Corpus Cases, and the Federal Rules of Civil Procedure.  In support of this Motion, Petitioner states the following:

1.     In his habeas corpus Petition and Memorandum of Law, Petitioner has raised specific allegations of violations of his constitutional rights that, if developed, would entitle him to relief.  Thus, Petitioner has shown good cause for conducting discovery on these issues.

2.     In Claim IA, see Petition at ¶¶ 1-26 and Memorandum at 2-18,

Petitioner has alleged that he was denied effective assistance of counsel and a fair trial due to trial counsel's failure to properly rebut or question the microscopic hair evidence and argument presented by the Commonwealth.  Trial counsel failed to consult with an independent expert, file a motion to exclude, or properly cross-examine the Commonwealth's expert.

3.     The only physical evidence connecting Petitioner to the crime scene was two hairs found on a mask recovered at the crime scene.  Although police originally traced this mask back to Martin Chmiel, and mitochondrial DNA testing showed the hairs could belong to either Martin or David Chmiel, the Commonwealth's microscopist testified at trial that the hairs were "microscopically similar" to Petitioner's hair, and not to Martin's.  Because Martin was the original subject of the police investigation and the Commonwealth's chief witness, this testimony was particularly damaging to the defense.

4.      As set forth in the Petition and Memorandum, at the time of Petitioner's trial, there were ample grounds upon which to challenge the scientific reliability, and thus admissibility, of the government's proposed microscopic hair analysis testimony.  Counsel's failure to investigate this issue and mount such a challenge was deficient performance without an objectively reasonable basis.

5.     Petitioner's claim also alleges that had counsel consulted with an

2

independent expert he would have been better able to understand and thereby

expose (during cross-examination of the Commonwealth's microscopist George

Surma or through  presentation of his own expert) the limitations of the field itself

and the problems with the procedures utilized by the Commonwealth when

collecting and testing the hairs at issue.  He failed to seek such expert assistance

and as a result his cross examination of the Commonwealth's expert and the police

officers involved in the collection and handling of this hair evidence was limited

and ineffectual.  Moreover, counsel's ability to raise questions as to the overall

reliability of Mr. Surma's test results was hampered.

   6. At the PCRA hearing, Petitioner presented his own microscopist,

Samuel Palenik.  Palenik testified that he was given insufficient background

materials to properly assess the reliability of the conclusions reached by the Mr.

Surma.  Palenik testified that was lacking a complete set of Mr. Surma's bench

notes (finding the three pages provided to him, which are the only documents he

considered bench notes, to be inadequate or incomplete), photomicrographs of the

hair evidence, documents regarding any verification testing which should have

been conducted pursuant to industry standards in existence at the time, and

documents pertaining to the collection and transfer of the hairs ultimately

subjected to testing.  NT 12/15/08 at 81, 88, 100, 156.

7.      In Claim II.A, <u>see</u> Petition at ¶¶ 105-45 and Memorandum at 55-90,
Petitioner has alleged that the Commonwealth violated <u>Brady v. Maryland</u>, 373
U.S. 83 (1963), <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), and related authority when
it failed to disclose exculpatory and impeachment evidence of the consideration
received by key prosecution witnesses Martin Chmiel and Thomas Buffton in
return for their testimony against Petitioner, and failed to correct false and
misleading testimony.

8.      Petitioner's claim alleges that the Commonwealth failed to disclose
an agreement between Thomas Buffton and the Commonwealth in violation of
<u>Brady</u> and its progeny, and that the Commonwealth elicited false testimony from
Buffton regarding consideration received, in violation of <u>Napue</u> and its progeny.

9.      At the time that he began cooperating with the police in this case,
Thomas Buffton was subject to prosecution for three separate felonies: a burglary
involving theft of computers from the University of Scranton, a burglary involving
theft of money from a house on Rundle Street in Scranton, and a conspiracy—
together with Martin Chmiel and Nancy Moran (Martin's sister and Buffton's wife
at the time)—to burn down Buffton's home for insurance proceeds.  Before
Buffton testified at Petitioner's trial, he and his conspirator Martin pled guilty to
crimes related to the arson case, but Buffton had not been charged with mail fraud

4

or insurance fraud related to the arson, nor had he been charged with any crimes relating to the two burglaries.  Also, his wife Nancy had not been charged with any crimes related to the arson.

10.    The Commonwealth, however, actually had an agreement with Buffton, but failed to disclose that agreement to the defense, and thus it was never revealed to Petitioner's jury.  As described in detail in the Petition, the uncontradicted post-conviction testimony of Thomas Buffton and Nancy Moran was that representatives of the Commonwealth offered Buffton significant benefits in exchange for his testimony, including: not prosecuting Buffton on the burglary cases; not prosecuting his wife on the arson case; leniency on his sentence; and assistance expunging his record in the future.  Moreover, the authorities also threatened to prosecute Buffton's wife for arson if he did not comply.  As explained in the Petition and Memorandum of Law, the fact that the jury did not hear the truth about the consideration received by Buffton was material.

11.    Petitioner also alleges that the Commonwealth failed to disclose an agreement between Martin Chmiel and the Commonwealth in violation of <u>Brady</u> and its progeny, and that the Commonwealth elicited false testimony from Martin regarding consideration received, in violation of <u>Napue</u> and its progeny.

12.    Martin was the prime initial suspect in the homicide, and admitted

5

suggesting and planning a burglary of the Lunarios. However, he denied playing any role in the homicides, and Bufton gave him an alibi for those offenses. Martin was also a witness for the prosecution at Petitioner's prior rape trial, and the Commonwealth's presentation at the penalty phase relied exclusively on evidence of Petitioner's prior rape conviction.

13.    As explained in the Petition and Memorandum, strong circumstantial evidence indicates that Martin Chmiel was in fact offered leniency on his arson case in exchange for his testimony at Petitioner's rape and homicide trials. When Martin testified against Petitioner at the rape trial, he had already admitted to committing the arson, and police had already verified that an arson occurred. The Commonwealth, however, did not disclose this information to the defense, and nothing about the arson was mentioned during Martin's testimony. Indeed, the Commonwealth did not even arrest Martin for the arson until four months after Petitioner's rape trial. At the homicide trial, Martin admitted both to conspiring to commit arson and to commission of the arson. He denied being offered or ever receiving anything for his testimony. Although Martin had admitted at the preliminary hearing in the rape case that he participated in the Rundle Street burglary with Thomas Bufton, the jury in Petitioner's homicide trial never learned about this criminal admission, or that he was never prosecuted for it.

6

14.     The fact that Martin provided significant assistance to the
Commonwealth before the prosecutor spoke on his behalf at his reconsideration of
sentence hearing strongly suggests that Martin was in fact offered and provided
leniency in exchange for his testimony at Petitioner's homicide case.  See Petition,
¶ 124.  Moreover, the jury never learned: 1) that Martin became almost
immediately eligible for furloughs, even receiving one prior to and during his
initial testimony in Petitioner's capital case; 2) that Martin's sentencing exposure
was reduced from thirty years to ten years as a result of his cooperation and
resulting plea agreement with the Commonwealth; and 3) that ADA Fisher, the
prosecutor on Petitioner's rape case, had testified on Martin's behalf at his motion
to reconsider.

15.     The PCRA hearing testimony established that the Commonwealth did
not disclose this information to the defense.  As argued in the Petition and
Memorandum of Law, the failure to disclose was material.

**Petitioner is Entitled to Discovery.**

16.     Under Rule 6 of the Rules Governing Section 2254 Cases, a habeas
petitioner is entitled to conduct discovery upon a showing of "good cause."  A
petitioner establishes "good cause" when "specific allegations before the court
show reason to believe that the petitioner may, if the facts are fully developed, be

able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S.

899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 299 (1969)). See

also Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012) (district court abused

discretion in denying discovery request for defense expert review of fire scene

evidence, where defense expert's opinion in post-conviction proceedings was

limited by denial of discovery by post-conviction court); Rule 6 of the Rules

Governing Section 2254 Cases, Advisory Committee Notes ("But where specific

allegations before the court show reason to believe that the petitioner may, if the

facts are fully developed, be able to demonstrate that he is confined illegally and is

therefore entitled to relief, it is the duty of the court to provide the necessary

facilities and procedures for an adequate inquiry.")  Accordingly, discovery must

be allowed "when discovery is essential for the habeas petitioner to develop fully

his underlying claim," Lee, 667 F.3d at 404, and when "there is a sound basis for

concluding that the requested discovery might allow [the petitioner] to

demonstrate that he has been confined illegally." Johnston v. Love, 165 F.R.D.

444, 445 (E.D. Pa. 1996).

     17.    Here, Petitioner has shown "good cause" for discovery.  Petitioner

has provided "specific allegations"—as explained above, in the Petition and

Memorandum of Law, and in the attached discovery request—"show[ing] reason

to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, at 908-09.  Petitioner's requests are appropriately narrow.  With regard to the microscopic hair evidence claim, "[g]iven that [Petitioner] has alleged that his expert's independent analysis will reveal that the [prosecution] expert testimony at his trial was fundamentally unreliable, he has satisfied the good cause standard." Lee, 667 F.3d at 404-05. With regard to the Brady/Napue claim, Petitioner requests information that is essential to show that the Commonwealth withheld information that its witnesses received favorable treatment in exchange for their testimony against him, and that would significantly bolster the defense theory that Petitioner's brother Martin's testimony was self-serving.  See, e.g., Dung The Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005) (discovery requested is "essential to the full development" of a Brady claim, and therefore the petitioner has shown good cause, when it "may well contain favorable, material information" and "would significantly bolster the defense theory of the case").

18.     In addition, the United States Supreme Court has explained that "[t]he very nature of [habeas proceedings] demands that [they] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris, 394 U.S. at 291.  This is never more so

than in the context of capital cases, in which the unique finality and irreversibility of the sentence require heightened procedural safeguards.  The Supreme Court has repeatedly held that because of the immense "qualitative difference" between the death penalty and a sentence of imprisonment, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."  Woodson v. North Carolina, 428 U.S. 280, 305 (1976); see also, e.g., Lockett v. Ohio, 438 U.S. 586, 604 (1978).  The requirement of enhanced reliability has been extended to all aspects of the proceedings leading to a death sentence, including those phases concerned with guilt, Beck v. Alabama, 447 U.S. 625, 637-38 (1980); sentence, Lockett, 438 U.S. at 604; appeal, Gardner v. Florida, 430 U.S. 349, 360-61 (1977); and post-conviction proceedings, Riley v. Taylor, 62 F.3d 86, 92 (3d Cir. 1995).  Because of the constitutionally heightened procedural safeguards to which he is entitled, Petitioner is entitled to discovery to prove his claims.

19.    Applying these standards, Petitioner requests permission to conduct discovery pursuant to Federal Rule of Civil Procedure 26(b), which provides, among other things, that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," and pursuant to Rule 6 of the Rules Governing Section 2254 Cases.   Petitioner's first set of

interrogatories and requests for document production, served on Respondents today, is provided as an exhibit to this Motion.

20.     As outlined above, the material requested in discovery is relevant to Petitioner's claims that: (a) trial counsel was ineffective for failing to investigate and rebut the Commonwealth's microscopic hair evidence, which was scientifically unreliable; (b) the Commonwealth violated the principles of <u>Brady</u> and <u>Napue</u> by failing to disclose exculpatory and impeachment evidence of the consideration received by key prosecution witnesses Martin Chmiel and Thomas Buffton and failing to correct false and misleading testimony, and, to the extent counsel had an obligation to seek and obtain that information, trial counsel was ineffective for failing to do so.  Finally, evidence of innocence, should it be discovered, would be grounds for relief under a freestanding claim, <u>see</u> <u>Herrera v. Collins</u>, 506 U.S. 390 (1993) (in a capital case, a persuasive freestanding claim of innocence would render the execution of that person unconstitutional and warrant habeas relief), or as a means to overcome any procedural bars to an innocence claim, <u>see</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995) (evidence of actual innocence overcomes procedural bars to merits review); <u>Munchinski v. Wilson</u>, 694 F.3d 308, 335-39 (3d Cir. 2012) (finding <u>Schlup</u> standard satisfied).

21.     Petitioner sought discovery in state post-conviction proceedings, but

that motion was granted only in part.  Numerous requests were denied, on the basis that Petitioner had not shown "exceptional circumstances" warranting its production.  See gen. Commonwealth v. Chmiel, No. 83-CR-748, Order (Lacka. Cty. Ct. Comm. Pleas, Oct. 31, 2008).

WHEREFORE, for the foregoing reasons, Petitioner respectfully requests that this Court grant his Motion for Discovery and order Respondents to answer his discovery requests.  Petitioner reserves the right to propound additional discovery requests in response to information that comes to light through Respondents' disclosures, and/or in relation to any counter-allegations Respondents may make in answering to the Petition and Memorandum.

Respectfully submitted,

/s/ Maria K. Pulzetti
JAMES MORENO (Pa. 86838)
MARIA PULZETTI (Pa. 203792)
TRACY ULSTAD (Pa. 87377)
Federal Community Defender for the
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
(Maria_pulzetti@fd.org)

Dated: September 25, 2013

12

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I  caused the foregoing Motion for Discovery

to be served on the following person by electronic filing at the address below:


James P. Barker, Esq.
Office of the Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120



s/ Maria K. Pulzetti
Maria K. Pulzetti


Dated:        September 25, 2013