# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID CHMIEL, | : | |
| | : | Chief Judge Kane |
| Petitioner, | : | |
| | : | No. 1:06-CV-02098 |
| v. | : | |
| | : | |
| JOHN E. WETZEL, Commissioner, et al., | : | **THIS IS A CAPITAL CASE** |
| | : | |
| Respondents. | : | |
| | : | |

## PETITIONER'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO RESPONDENTS

Petitioner, David Chmiel, through counsel, propounds the following discovery requests pursuant to Rules 26 and 33-34 of the Federal Rules of Civil Procedure as well as Rule 6 of the Rules Governing Section 2254 Cases. Petitioner requests that Respondents answer the following interrogatories under oath and produce the following documents or tangible things at the offices of the Federal Community Defender for the Eastern District of Pennsylvania, 601 Walnut St., Suite 545W, Philadelphia, PA 19106, in accordance with the definitions and instructions referenced below.  The reasons for this discovery request are provided in Petitioner's Motion for Discovery, filed with the district court today.

## Definitions and Instructions

A.     For the purposes of this discovery request, "document" or "documents" shall be given the broadest possible meaning under the Federal Rules of Civil Procedure and shall mean and include any writing of any kind, type or description, including, but not limited to, correspondence, letters, memoranda, facsimiles, electronic mail (email), notes, desk calendars, diaries, statistics, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, brochures, prospectuses, interoffice and intra-office communications, notations of any sort of conversation, telephone call messages, meetings or other communications, computer data, or other material of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tapes, film, electronic facsimiles, computer storage devices, or any other medium.  The term also means a copy where the original is not in your possession, custody or control and every copy of a document if such copy is not an identical duplicate of the original.

B.     "Respondents" shall mean and include any named defendant in this action, and shall include their predecessors, successors, and persons acting on behalf of each of the foregoing.

2

C.     "You" or "your" shall mean and include each of the Respondents and shall also include the employees, agents, consultants, attorneys and representatives of each of the Respondents, including the original investigating and prosecuting authorities in Mr. Chmiel's criminal cases.

D.     "Petition" shall mean the Petition for Writ of Habeas Corpus filed in this action on May 18, 2012, and "Memorandum" shall mean the Memorandum of Law filed on December 14, 2012.

E.     These Document Requests cover all documents in your possession, custody, or control, and include all documents in your immediate possession or in the possession of your attorneys or readily available to you through requests upon an agent or consultant of yours.

F.     If any document responsive to this request was, but no longer is, in your possession, custody or control, describe each document and indicate the manner and circumstances under which it left your possession, custody, or control and its present whereabouts, if known.

G.     If any document responsive to this request has been misplaced, discarded, or destroyed, describe each such document and indicate the manner and circumstances under which it was misplaced, discarded, or destroyed, if known, and its last whereabouts, if known.

3

H.      These Document Requests and Interrogatories are to be deemed

continuing in nature so as to require proper supplemental responses if you obtain

further or different information during these proceedings.  See Fed.R.Civ.P. 26(e).

I.      If any documents or other materials pertaining to this request are

withheld for any reason, including privilege or work product, please produce an

inventory that specifically identifies each document or item that is withheld and

specifies the reason for non-disclosure of each item and preserve a complete copy

to enable subsequent judicial review.  See Fed.R.Civ.P. 26(b)(5).

## INTERROGATORIES

1.      Did any investigating entity, including the Scranton Police or the
Pennsylvania State Police, ever investigate Martin Chmiel and/or Thomas Buffton
in connection with a 1983 burglary at 1333 Rundle Street in Scranton, PA?  See,
e.g., App. Exh. 33[1] (11/22/83 police report documenting Martin's admission
regarding this burglary); Exh. 1, NT 8/12/08, 18-23 (Nancy Moran's PCRA
testimony regarding that burglary).

2.      Did any investigating entity including the Scranton Police or the
Pennsylvania State Police ever investigate Thomas Buffton and/or Martin Chmiel
with regard to a theft of computers from the University of Scranton?  See, e.g.,
Exh. 1, NT 8/12/08, 18-23 (Nancy Moran's PCRA testimony regarding that theft).

3.      Did any investigating entity including the Scranton Police or the
Pennsylvania State Police investigate Thomas Buffton and/or Martin Chmiel for

---

[1]Exhibits that are in the Appendix filed on 12/14/12 will be referenced herein as "App.
Exh." followed by a numeral.  Additional exhibits supporting the discovery requests are attached,
and referenced as "Exh." followed by a numeral.

insurance fraud and/or mail fraud in connection with the arson of Buffton's home?

4.      Did any investigating entity including the Scranton Police or the Pennsylvania State Police interview witnesses at a Mister Donut shop at 1101 Washington Avenue in Scranton with regard to whether they observed Thomas Buffton or Martin Chmiel in the shop on the night of the homicides?  See, e.g., Exh. 2, NT 8/26/02, 121-22 (Martin's testimony about visiting the donut shop); Exh. 3, 10/5/83 Supplement Report (police interview of Martin Chmiel in which he describes visit to the donut shop); Exh. 4, 11/21/83 Supplement Report (police interview of Thomas Buffton in which he describes visit to the donut shop).

5.      What was the "ongoing theft investigation" for which Martin Chmiel provided "local law enforcement" with "information" on or around October 1991? See Exh. 5 at 2 (United States v. Martin Chmiel, No. Cr. 90-090-001 (M.D. Pa. Oct. 3, 1991)).

6.      Was Trooper Genova, an investigating officer in the case, related directly or related by marriage to the homicide victims James, Victor and Angelina Lunario?

7.      Did Trooper Gerald Gaetano work on any other cases in which Martin Chmiel was a suspect, an informant or a testifying witness for the Commonwealth?

8.      Did Trooper Walter Carlson work on any other cases in which Martin Chmiel was a suspect, an informant or a testifying witness for the Commonwealth?

## DOCUMENT REQUESTS

1.      Any and all documents in the Lackawanna County District Attorney's

homicide file for this case, including but not limited to documents regarding

favorable treatment offered to or received by Commonwealth witnesses in

exchange for their testimony against Mr. Chmiel.

2.     Any and all documents from Attorney Kennedy's file in this case, including but not limited to his notes referenced in his 1998 PCRA testimony.  The court ruled that the Commonwealth could review the notes.  <u>See</u> NT 1/27/88, 458-62.

3.     Any and all records, including correspondence, memos, notes, reports, and any other document regarding the informant status of Martin Chmiel and/or his status as a cooperating witness for a government agency and/or law enforcement agency, including but not limited to the Lackawanna District Attorneys Office, the Scranton and Throop Police Departments, the Pennsylvania State Police, and/or any agent thereof.

4.     Any and all documents from police files or prosecution files regarding investigation of Thomas Buffton and/or Martin Chmiel in a theft of computers from the University of Scranton.  <u>See</u> Exh. 1, NT 8/12/08, 18-23.

5.     Any and all documents from police files or prosecution files regarding an investigation of Thomas Buffton, Nancy Buffton and/or Martin Chmiel regarding mail fraud or insurance fraud in connection with the arson of Buffton's home.

6.     Any and all documents from the Scranton, Throop, or Pennsylvania State Police files and/or the Lackawanna County District Attorney's file regarding interviews of potential witnesses at the Mister Donut shop on Washington Avenue in Scranton and whether and when they saw Martin Chmiel and/or Thomas

Buffton in the shop on the night of the homicides.  See, e.g., Exh. 2, NT 8/26/02,

121-22 (Martin's testimony about visiting the donut shop for more than an hour on

the night of the homicides); Exh. 3, 10/5/83 Supplement Report (police interview

of Martin Chmiel in which he describes visit to the donut shop); Exh. 4, 11/21/83

Supplement Report (police interview of Thomas Buffton in which he describes

visit to the donut shop).

7.     Any and all documents from police files, court files, prosecution files,

and/or FBI files regarding any criminal activity or suspected criminal activity by

Martin Chmiel, including without limitation:  possessing, delivering, or

transporting controlled substances; conducting illegal gambling activities;

violating liquor control statutes and provisions, including sales of liquor to

minors; violations of codes enforcement; and any and all arrangements between

Martin Chmiel and police or prosecution representatives arising out of Martin

Chmiel's suspected or documented illegal activities.

8.     Any and all records of investigation of Martin Chmiel by the Fern Ridge

State Police Barracks or other entity of the Pennsylvania State Police on or around

1991.

9.     Any and all documents regarding the "ongoing theft investigation" for

which Martin Chmiel "provided local law enforcement with information" on or

around October 1991, referenced in a sentencing departure memorandum as a basis for a downward departure.  See Exh. 5 at 2 (<u>United States v. Martin Chmiel</u>, No. Cr. 90-090-001 (M.D. Pa. Oct. 3, 1991)).

10.     Any and all documents of cases in which Trooper Gerald Gaetano or Trooper Walter Carlson was involved, and Martin Chmiel was a suspect, an informant, or a witness for the Commonwealth.

11.     Any and all documents regarding the investigation of a burglary at 1333 Rundle Street, Scranton, PA, including the file in possession of the Scranton Police.  See, e.g., App. Exh. 33 (11/22/83 police report documenting Martin's admission regarding this burglary); Exh. 1, NT 8/12/08, 18-23 (Nancy Moran's PCRA testimony regarding that burglary).

12.     Any and all documents from the Throop Police Department regarding their investigation of the homicides; officers from the Throop Police Department were the first on the scene.  See Exh. 7 (Sept. 26, 1983 PSP Supplement Report) (noting that Pennsylvania State Police arrived at the scene after request by the Throop Police Department, which was already on the scene).

13.     Any and all documents from police or prosecution files regarding the investigation of a gun (22 Cal. ROHM, Mod. 60, Ser # 10255213) that Martin Chmiel recovered from Thomas Buffton's home on September 28, 1983 and

provided to police. See Pet. Exh. 13; Exh. 15 (9/28/83 Police Report on recovery of gun). Any connection between Martin and/or Buffton and this unregistered weapon would be exculpatory information that should have been turned over to the defense.

14.     Any and all documents of professional misconduct, unlawful conduct, and/or disciplinary proceedings, including but not limited to complaints (written and/or oral), investigation of such complaints or allegations, disciplinary reports, and/or official findings, formal and/or informal, concerning retired State Trooper Gerald Gaetano or Trooper Walter P. Carlson, the lead investigators in this case.

15.     Any and all documents regarding payment or non-payment of restitution by Thomas Buffton regarding the arson of his home.  See, e.g., Exh. 9, Commonwealth v. Buffton, No. 84-CR-197, NT 6/28/84 at 7-8 (Lack. Cty. Ct. Comm. Pleas) (Buffton sentenced to make full restitution for the insurance fraud); Exh. 10, Commonwealth v. Buffton, No. 84-CR-197, NT 8/1/84 (Lack. Cty. Ct. Comm. Pleas) (same); Exh. 11, Commonwealth v. David Chmiel, No. 83-CR-748, NT Vol. II, 1249-50 (Lack. Cty. Ct. Comm. Pleas) (1984 trial) (Buffton's testimony that he was ordered to pay restitution to the insurance company); Exh. 12, Commonwealth v. David Chmiel, NT 8/28/02, 97-99 (Buffton's testimony that he paid "nothing" to the insurance company); Pet. Exh. 48, Declaration of Nancy

Moran (stating that Buffton did not pay "one dime" of the court-ordered restitution).

16.     Any and all documents or correspondence with State Farm Insurance, including agent William J. Trently, regarding repayment of insurance monies issued to Thomas Buffton before the fire that occurred at 412 Eynon Street was declared an arson.  See Exh. 10, Thomas Buffton Pre-Sentence Investigation (noting communication between state police and State Farm Insurance Company regarding restitution).

17.     Any and all documents regarding the informant status of Thomas Buffton and/or his status as a cooperating witness for a government agency and/or law enforcement agency, including but not limited to the Lackawanna District Attorneys Office, the Harrisburg Police Department, the Pennsylvania State Police, the FBI, and/or any agent thereof.  See, e.g., Exh. 8, supra, at 5 (ADA Lawrence Moran's testimony regarding Buffton's cooperation in multiple cases).

18.     Any and all documents from Pennsylvania or Alabama regarding an interstate compact for Thomas Buffton to return to Pennsylvania to testify in Petitioner's trial in 2002.  See Exh. 11, Interstate Compact paperwork (providing Buffton with "exemption from criminal arrest and service of civil process" during the subpoena for his testimony in Petitioner's 1995 trial).

19.    Any and all documents generated as a result of questions asked and lie

detector/polygraph tests administered in the investigation of this case, including

but not limited to polygraphs administered to Richard Buffton on or about Oct. 4,

1984, see Exh. 12 (PSP reports of Richard Buffton polygraph); Timothy Monroe,

on or about May 2, 1984, see Exh. 13 (PSP report of Timothy Monroe polygraph);

Martin Chmiel; and Thomas Buffton by any governmental agency and/or law

enforcement agency, including but not limited to Lackawanna District Attorneys

Office, the Scranton, Throop and Harrisburg Police Departments, the Pennsylvania

State Police, the FBI, and/or any agent thereof.

20.    A full and complete copy of the file of the former Assistant District

Attorneys William Fisher or Ernest Preate of the Lackawanna District Attorney's

Office regarding the investigation, prosecution, and sentencing of Martin Chmiel,

Thomas Buffton, and Nancy Buffton regarding the arson fire of the Buffton's

home, including any and all notes, correspondence, police reports, phone messages

and memos contained therein.  See Exh. 17, NT 12/15/08, 57-60 (Buffton's PCRA

testimony about his conversations with Preate).

21.    A copy of prison/jail records for Martin Chmiel and Thomas Buffton,

regarding the sentences they served for Lackawanna County charges stemming

from the arson fire at the Buffton home, including all documents (handwritten or

11

otherwise) concerning the reduction of their original sentences and any conditions of leniency provided to them, including, but not limited to, the request and issuance of furloughs.  See Petition at ¶ 125 ("The jury also never learned that Martin became almost immediately eligible for furloughs.  Nine days after his re-sentencing, Martin received his first furlough.  Indeed, available court records indicate he received a furlough prior to and during the course of Petitioner's first capital trial."); App. Exhs. 15-21 (Orders dated August 10, 1984; September 7, 1984; October 3, 1984; November 1, 1984; November 29, 1984; December 27, 1984; and January 22, 1984).

22.    A complete copy of Mr. Chmiel's case file and case notes as prepared and maintained by George Surma, any other person who verified his conclusions, and/or the Pennsylvania State Police Crime Laboratory, including, but not limited to: worksheets, a complete set of bench notes, any and all photomicrographs taken of this evidence, contamination records, and any and all data obtained or relied upon by George Surma, any other tester,  and/or the Pennsylvania State Police Crime Laboratory.  See Petition at ¶¶3-7, 12-13; App. Exhs. 53, 55; Exh. 17, NT 12/15/08 at 75-97, 105 & 121 (PCRA expert testimony regarding records necessary to review the microscopic hair testimony at trial).

23.    A copy of any and all documents and/or records in the possession of the

Scranton or Throop Police Departments, the Pennsylvania State Police and/or any other agency relating to the collection, transfer, and storage of the hair evidence in this case, including the hairs collected at the crime scene and all other hair samples obtained for comparison purposes.

24.     Complete copies of all Standard Operating Protocols (SOPs) relied upon by George Surma (and/or the Pennsylvania State Police Crime Laboratory) in connection with the microscopic hair analysis testing conducted in Mr. Chmiel's case, including but not limited to laboratory police and procedure manuals, testing protocols, methods of hair collection, quality assurance guidelines or standards, training materials and ASCLAD accreditation.

25.     Any and all documents in possession of the Scranton Police department, Pennsylvania State Police, and/or Lackawanna County District Attorney's office regarding the rape case against Petitioner, No. 83-CR-364.

Respectfully submitted,

 /s/ Maria K. Pulzetti
JAMES MORENO (Pa. 86838)
MARIA PULZETTI (Pa. 203792)
TRACY ULSTAD (Pa. 87377)
Federal Community Defender for the
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
(Maria_pulzetti@fd.org)

Dated: September 25, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I  caused the foregoing *Interrogatories and*

*Document Requests* to be served on the following person by electronic filing and by

U.S. mail at the address below:


James P. Barker, Esq.
Office of the Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120



s/ Maria K. Pulzetti
Maria K. Pulzetti


Dated:        September 25, 2013