# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID CHMIEL,      :     Judge Kane

        Petitioner,      :     No. 1:06-CV-02098

     v.        :

            :     **THIS IS A CAPITAL CASE**

JOHN E. WETZEL, Commissioner, et al.,      :

        Respondents.      :

            :

## PETITIONER'S MOTION TO COMPEL RESPONDENTS TO PRODUCE DISCOVERY PURSUANT TO COURT'S ORDER

TRACY ULSTAD
JAMES MORENO
Federal Community Defender Office
    for the Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis Center – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106

Counsel for Petitioner

Dated: July 8, 2015
        Philadelphia, Pennsylvania

Petitioner, David Chmiel, through undersigned counsel, hereby moves this Court to compel Respondents to comply with the Court's order dated September 24, 2014 ("Discovery Order") (ECF No. 69). In support thereof, Petitioner states the following:

On September 24, 2014, this Court granted Petitioner's motion for discovery, found good cause for Petitioner's request, and ordered Respondents to answer Petitioner's interrogatories and produce all requested documents including the Lackawanna County District Attorney's file, by October 24, 2014. *See* Discovery Order. Despite Petitioner's good faith efforts to confer with Respondents regarding production of all relevant documents, Respondents have not complied with the Discovery Order. In particular, Respondents have objected to the production of prosecution files that they admit they likely possess yet which they belatedly and vaguely claim they do not have to produce. Petitioner therefore moves this Court to compel Respondents to produce documents this Court found "fundamental" to proving violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), as asserted in Claim II.A of Mr. Chmiel's Petition for Writ of Habeas Corpus ("Petition"). Discovery Order at 7.

## I.      RELEVANT PROCEDURAL AND FACTUAL HISTORY

1.      Petitioner, David Chmiel, is in the custody of the Commonwealth of Pennsylvania in the State Correctional Institution at Greene, under a sentence of death.

2.      Petitioner filed his Petition on May 18, 2012 (ECF No. 32) and a Memorandum of Law on December 14, 2012 (ECF No. 45), which are currently pending before this Court.

3.      On September 25, 2013, Petitioner filed a Motion for Discovery and Consolidated Brief in Support ("Discovery Motion") (ECF No. 53) accompanied by a First Set of Interrogatories and Requests for Production of Documents  ("Interrogatories and Requests") (ECF No. 53-2). The first requested documents were "any and all documents in the Lackawanna County District Attorney's file for this case, including but not limited to documents regarding

favorable treatment offered to or received by Commonwealth witnesses in exchange for their testimony against Mr. Chmiel." *See* Interrogatories and Requests at 5. As set forth in Petitioner's Discovery Motion, this request sought information in support of *Brady* and *Napue* violations alleged in Claim II.A of Mr. Chmiel's Petition. *See* Discovery Motion ¶¶ 7-15.

4.      Respondents filed a response in opposition to Petitioner's discovery motion on May 15, 2014. Respondents' Brief in Opposition to Petitioner's Motion for Discovery (ECF No. 65). Respondents did not specifically contest Petitioner's request for the Lackawanna County District Attorney's file. *Id.*

5.      On September 24, 2014, this Court found good cause for Petitioner's discovery requests, granted Petitioner's motion, and ordered Respondents to answer Petitioner's interrogatories and produce all requested documents including the Lackawanna County District Attorney's file, by October 24, 2014. Discovery Order at 7.

6.      On October 24, 2014, Respondents made an initial production of documents and requested additional time to produce the remaining documents and respond to Petitioner's interrogatories. *See* ECF No. 70. This request was granted, Oct. 27, 2014 Order (ECF No. 71), and on November 24, 2014, Respondents provided additional documents and responded to Petitioner's interrogatories (ECF No. 72).

7.      This Court granted Petitioner's request for time to resolve discovery issues amongst the parties. On February 27, 2015, based upon the responses provided and documents received from Respondents, Petitioner sent a letter requesting additional documents and seeking additional information pertaining to the interrogatories. *See* Letter from Tracy Ulstad to James Barker (Feb. 27, 2015), attached as Petitioner's Exhibit A. In response to Respondents' statement that the Lackawanna County District Attorney's Office—which had prosecuted the

first trial—was not in possession of a file for this case, Petitioner requested production of the Office of the Attorney General's ("OAG") homicide file for the second and third trial. This request was made in part because the OAG likely "took possession of, received a copy of, or otherwise incorporated portions of" the Lackawanna County District Attorney's homicide file. Pet'r Ex. A at 2.[1] It was also based on this Court's finding of good cause for the production of the file of the prosecuting agency for the first trial: because the material in the OAG's file is "even more relevant to the issues currently before the Court," Petitioner argued that good cause existed for production of the OAG's file, too. *Id.*

8.     On April 2, 2015, Respondents provided additional documents and responses to interrogatories, but refused to comply with a number of Petitioner's requests, including Petitioner's request for a copy of the OAG's file. Respondents stated:

> This request must be denied. Criminal defendants are not entitled to unfettered access to prosecution files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987); *see also Commonwealth v. Williams*, 732 A.2d 1167, 1175-76 (Pa. 1999) ("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.").

Letter from Philip McCarthy to Tracy Ulstad (Apr. 2, 2015), attached as Petitioner's Exhibit B.

Respondents further stated:

> The [Office of the Attorney General's] file does not reflect whether any files were provided by the DA's Office to the OAG. However, it is common for files to be provided upon referral, and those files are usually incorporated into the OAG's file. Any files provided by the Lackawanna DA were likely incorporated into the OAG file and determination of which files originated from the DA would be impractical.

---

[1] Relatedly, Petitioner inquired as follows: "[G]iven the Lackawanna County District Attorney's Office tried the first trial in 1984 and the Office of the Attorney General tried the second and third trials in 1995 and 2002, did the Attorney General's office take possession of, receive a copy of, or otherwise incorporate portions of the Lackawanna County DA's Office homicide file for the first trial in 1984?"

*Id.* at 2 n.1.

9.    Petitioner wrote to Respondents on April 16, 2015, specifically responding to their refusal to provide Petitioner with a copy of the OAG file for the case. Petitioner argued that based on Respondent's admission—that "[a]ny files provided by the Lackawanna DA were *likely incorporated* into the OAG file"—provided "a reasonable basis to believe that the contents of [the OAG's] file contain the Lackawanna County DA's file" and therefore showed "why the OAG file is subject to disclosure." Letter from Tracy Ulstad to Philip McCarthy (April 16, 2015), attached as Petitioner's Exhibit C.

10.   On April 22, 2015, Respondents filed with this Court a Supplemental Response to Petitioner's First Set of Interrogatories and Request for Production of Documents ("Supplemental Response") (ECF No. 83), stating their intention to provide some additional discovery and reiterating their intention not to comply with a number of Petitioner's outstanding discovery requests, including Petitioner's request for production of the OAG's file, *see id.* at 4. In this Supplemental Response, Respondents assert new grounds in support of their refusal, stating it would be "unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and would require Respondents to disclose documents that are protected from disclosure by statute and/or privilege, including the attorney work product privilege." *Id.*

11.   On April 22, 2015, Petitioner requested additional time to review the new documents provided and to file a Motion to Compel with regard to Respondents refusal to fully comply with the Court's Order. Motion for Forty-Five Day Extension of Completion of Discovery Deadline (ECF No. 84). On May 17, 2015, this Court issued an Order granting Petitioner's request. (ECF No. 85). This Motion to Compel is filed in compliance with the Court's May 17 Order.

## II.    PETITIONER HAS ESTABLISHED GOOD CAUSE TO OBTAIN THE PROSECUTOR'S FILES FOR THIS CAPITAL CASE.

12.    This Court has already determined that there was good cause for the production of the Lackawanna County District Attorney's file.  Noting the importance of Thomas Buffton and Martin Chmiel to the Commonwealth's case and the specific items Petitioner identified that could show these witnesses received favorable treatment in exchange for their testimony, this Court specifically found "the discovery requests relating to Claim II.A. [were] fundamental to the claim." Discovery Order at 7.

13.    Respondents concede that they "likely incorporated" the Lackawanna County DA's file into the OAG file and that it would be "impractical" to separate out the two documents. This further shows why the OAG file is subject to disclosure in response to Petitioner's specific request for access to the Lackawanna County DA's file. *See* Pet'r Ex. B at 2 n.1.  Respondents acknowledge that it is their ordinary practice "for files to be provided upon referral." Respondents should not be able to evade compliance with this Court's order because they have intermingled their file with a document for which this court has found "good cause" to produce.

14.    To the extent there is "good cause" for Petitioner to obtain the file from the prosecuting agency for the first trial—the Lackawanna County District Attorney's Office, there is likewise good cause for Petitioner to obtain the OAG's file.  The OAG stepped into the role ordinarily taken by the Lackawanna County District Attorney when it prosecuted the third trial. And that third trial is the only proceeding at issue for purposes of the current habeas corpus litigation.

15.     Finally, current federal discovery proceedings have already led to the discovery of additional *Brady* evidence that the Commonwealth repeatedly denied existed.[2]  This evidence shows that Commonwealth witnesses Thomas Buffton and Martin Chmiel received undisclosed benefits in exchange for their testimony at Petitioner's trial.  Specifically, these previously undisclosed documents show that based upon their cooperation in Petitioner's case, Ernest Preate, the Lackawanna County District Attorney prosecuting Petitioner, spoke to arson investigators and ensured that Martin and Buffton were charged with Felony 2 Arson, rather than Felony 1 Arson. *See* Incident No. RL-93332, Supplemental Report dated 2/1/84 (Bates Stamped 2227), attached as Petitioner's Exhibit D (Preate recommends that all suspects be charged with Felony 2 Arson, not Felony 1 Arson).  This was a significant benefit which reduced prison exposure for Buffton and Martin from twenty to ten years, when the facts of the case could have supported a felony 1 or felony 2 indictment. *Compare* 18 Pa. Cons. Stat. § 3301(a)(1) *with id.* § 3301(c). These documents also show that Mr. Buffton was provided another benefit as a result of Mr. Preate's intervention.  Preate ordered that Nancy Buffton, Thomas Buffton's wife, who according to all accounts was involved in the planning and implementation of this arson, would not be charged with any criminal activity related to the fire. *See* Incident No. RL-93332, Supplemental Report dated 2/23/84 (Bates Stamped 2228), attached as Petitioner's Exhibit E ("Preate decided that Nancy Buffton would not be charged with any crimes regarding this fire . . . . based on the facts of another investigation involving the suspects of this fire investigation [Petitioner's murder case].").  As a result of Mr. Preate's decision, Nancy's name was removed from the fact sheet of the Affidavit of Probable Cause for Arrest Warrant. *Id.*  During state and

---

[2]  This evidence will be the subject of Petitioner's amendment to Claim IIA.

federal court litigation, the Commonwealth has repeatedly asserted that Thomas Buffton and Martin Chmiel did not receive any benefits for his testimony, assertions that are contradicted by these newly provided documents.

16.     Taking into account these developments, Petitioner has stronger grounds now for compelling production of the OAG file.  Discovery so far has already begun to support Petitioner's *Brady* claim.  It is even likelier that the file this Court found good cause to produce and that Respondents refuse to produce contains *Brady* material.

## III.     RESPONDENTS WAIVED ANY OBJECTION TO THE PRODUCTION OF THE PROSECUTOR'S FILES.

17.     In their initial discovery response, Respondents did not oppose Petitioner's request for the Lackawanna County DA's file.  Once this Court granted Petitioner's request, Respondents did not move for reconsideration—claiming privilege or any other basis as to why they should not have to disclose this file.  Nor did Respondents appeal from this Court's Order requiring the disclosure of the prosecution's file, asserting work-product privilege.

18.     Despite their initial failure to object, over the course of discovery negotiations between the parties, Respondents provided a number of different reasons why they will not comply with the Court's order.  First, they argue that "criminal defendants are not entitled to unfettered access to prosecution files." Pet'r's Ex. B at 2.  Then, they claim providing their file would be "unduly burdensome," unlikely to lead to the discovery of admissible evidence, and a violation of the attorney work-product privilege.  Supplemental Response at 4.

19.     Respondents' opposition is too vague and comes too late.  This is particularly the case with regard to their assertion of work-product privilege, which Respondents have waived by failing to assert in the manner set out by the Federal Rules:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Failing to provide such notice "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26 cmt. (1993 Amendments). Because Respondents waited to assert this privilege until it provided a "supplemental response" to the Court, almost seven months after this Court issued its Discovery Order and nearly two years after its first response to Petitioner's Discovery Motion, Respondents' assertion should be deemed waived. And because Respondents have not specified the reason why the entire OAG file, which admittedly may contain the Lackawanna County District Attorney's file, is protected from disclosure. *See In re Horn*, 185 F. App'x 199, 204 (3d Cir. 2006) (unexplained reference to work-product privilege in a footnote insufficient to claim privilege).

20.     In sum, Respondents' opposition comes too late; they waived these objections by not raising them in the first instance. Even now, Respondents' assertion of privilege is made in such a way—a boilerplate objection without any accompanying privilege log—that Petitioner and this Court are unable to effectively assess the claim.

## IV.    ASSUMING THE WORK-PRODUCT PRIVILEGE HAS NOT BEEN WAIVED, THE DOCRINE DOES NOT INSULATE RESPONDENTS FROM HAVING TO DISCLOSE THEIR FILES OR PORTIONS OF THEIR FILES.

21.     Even if properly raised, Respondents' invocation of the work-product privilege is unavailing. "The privilege derived from the work-product doctrine is not absolute." *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). It is

an "intensely practical" doctrine, whose scope reflects society's interest in "the proper functioning of the criminal justice system." *Id.* at 238.

22.     A uniform federal standard governs the work-product privilege. Fed. R. Civ. P. 26(b)(3); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under that standard, a party may discover documents created in anticipation of litigation if it "shows that it has a substantial need for the materials to prepare its case" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Where a court orders production of those materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(B).

23.     In finding that Petitioner has shown good cause to obtain the Lackawanna County D.A.'s file, this Court, has already found that Petitioner has a substantial need for the OAG file to assist in the preparation of his case. As the Court found: "the discovery requests relating to Claim IIA [are] fundamental to the claim." Discovery Order at 7. Claim II.A raises claims of *Brady* and *Napue* violations involving two central Commonwealth witnesses: Martin Chmiel and Thomas Buffton.

24.     At trial, Martin Chmiel was the Commonwealth's central witness, providing the only testimony that directly implicated Petitioner in these three murders. Martin testified that Petitioner participated in the planning and actual murder of the Lunarios and admitted to doing so after the fact. Martin was also the initial police suspect and the person the defense argued was solely guilty of this crime. The sleeve of Martin's sweater was used to make a mask found at the crime scene. When confronted with this information, Martin hesitantly admitted that he made the mask and participated in the planning of the burglary, but claimed to have backed out of the

plan before it was carried out. Hairs found on the mask found at the scene and DNA testing showed that Martin could not be excluded as the source of hairs found on the mask recovered from the victims' home, which Martin explained by saying he tried the mask on at some point after making it. Impeaching Martin Chmiel with any available *Brady* material was central to Petitioner's defense.

25.     Thomas Buffton was another key Commonwealth witness, mainly because he provided an alibi for Martin Chmiel. This alibi testimony not only enhanced Martin's credibility in the eyes of the jury, it also exculpated the only other viable suspect which in turn seriously hampering Petitioner's defense. Likewise, impeaching Buffton would have been very beneficial to the defense.

26.     Consequently, Petitioner has shown a substantial need to obtain access to the OAG's file to enable Petitioner to prove his allegations of constitutional error—including *Brady* and *Napue* violations involving both Martin Chmiel and Thomas Buffton. *See* Habeas Petition, Claim IIA.

27.     Petitioner is unable to obtain the substantial equivalent of the Lackawanna County District Attorney's file by other means. These files are in the sole possession of Respondents. Deposing the trial prosecutor twenty-five years after the fact is no replacement for, and not the substantial equivalent of, obtaining the trial prosecutor's contemporaneously kept file.

28.     Moreover, in Petitioner's case, the work-product doctrine must conform to the compelling interest in vindication of a criminal defendant's constitutional rights. "Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, the work-product immunity for discovery . . . does not alter the prosecutor's duty to disclose material that is within *Brady*." 2 Charles Alan Wright, *Federal Practice and Procedure* § 254.2 (3d ed. 2000),

*quoted in Dickson v. Quarterman*, 462 F.3d 470, 480 n.7 (5th Cir. 2006). As a result, the work-product doctrine does not insulate discovery of attorney work product (including mental impressions) that provides evidence of, and may itself embody, a constitutional violation. A prosecutor may not hide behind a claim of work-product privilege when his or her file contains *Brady* type materials, or when the prosecutor has placed putatively privileged materials in issue. Therefore, while it may be true that *Brady* itself does not operate as a rule of discovery, its constitutional mandate alters the balance of interests that underlie the qualified work-product privilege. As one district judge put it:

> A theme running through these issues, to use the vernacular of recent history, is "what did the government know, and when did it know it?" Where the activities of counsel in the underlying proceeding form the very basis of a present claim for relief, courts routinely "find the need for production of counsel's work product compelling."

*Harris v. United States*, No. 97 Civ. 1904, 1998 WL 26187, at *2 (S.D.N.Y. Jan. 26, 1998) (Haight, J.) (citation omitted); *see also Roberts v. Warden, San Quentin State Prison*, No. CIV S-93-0254 GEB, 2012 WL 5523430, at *4 (E.D. Cal. Nov. 14, 2012) (documents about prosecutor's mental impressions "may very well be the best evidence of what [the prosecutor] knew about his witnesses or should have known and when he knew it or should have known it.").

29.    Courts have ordered the disclosure of the prosecutor's file, or portions of this file, in a number of different cases. *See Ricardo Natividad v. Beard*, No. 2:08-CV-00449-CMR (E.D. Pa. April 3, 2013) (ordering disclosure of the complete files of the Philadelphia Police Department and the District Attorney's Office regarding two murders and prosecution of Natividad for these murders); *Gwynn v. Beard*, No. 08- 5061 (E.D. Pa. Mar. 19, 2010) (ordering disclosure of Philadelphia District Attorney file); *Simmons v. Beard*, No. 02-cv-0161 (W.D. Pa. Dec. 24, 2002) (ordering disclosure of documents from police and prosecutor files); *Washington v. Beard*, No. 07-3462 (E.D. Pa. Jan. 20, 2010) (ordering disclosure of investigative files and

prosecutor's jury selection notes); *Breakiron v. Horn*, 00-cv-300, 2008 WL 4412057 at *23, *31

(W.D. Pa. Sept. 24, 2008) (noting prior order granting *Brady* discovery including documents in

prosecutor's file, and granting relief on resulting *Brady* claim); *D'Amato v. Beard*, No. 05-cv-

2019 (E.D. Pa. Nov. 9, 2006) (ordering *Brady* discovery including materials in police and

prosecution files); *Uderra v. Beard,* No. 05-01094 (E.D. Pa. Feb. 9, 2009 (ordering disclosure of

prosecutor's notes on jury selection, juror questionnaires and materials on DA Office's jury

selection policies, practices or training materials); *Commonwealth v. Terry Williams*, CP-51-CR-

0823621-1994 (Phila. Cnty. C.C.P. Sept. 8, 2012) (entire DA file turned over for two murder

prosecutions, with exception of jury selection notes which were reviewed in-camera);

*Commonwealth v. Ramon Sanchez*, No. 3652 of 2001 (Lehigh Cnty. C.C.P. July 3, 2010)

(ordered disclosure of portions of DA's file relating to witnesses, statements made, deals

provided and allegations of sexual abuse).

      30.     This Court should fashion a similar order in Petitioner's case – either ordering

disclosure of the OAG's file to Petitioner or to this Court for an in-camera review to determine

whether or not some or all of the OAG's file should be turned over.

## V.    RESPONDENTS' OTHER ASSERTED REASONS FOR NOT COMPLYING WITH COURT'S ORDER ARE VAGUE AND DO NOT ABSOLVE RESPONDENTS OF THEIR DUTY TO COMPLY WITH THE COURT'S ORDER.

      31.     Respondents fail to explain why they describe Petitioner's request as "unduly

burdensome." Federal discovery, by its nature, is burdensome. To the extent that Respondents

are concerned about the burden of separating the *Brady* material from the other material in the

file—that burden is placed on Respondents by the Constitution. Regardless, this Court's order

and Petitioner's showing of good cause cannot be overcome by an assertion that compliance

would be burdensome.

32. Respondents failed to provide any support for their assertion that disclosure of the OAG files is unlikely to lead to the disclosure of admissible evidence. Moreover, Respondents eleventh hour assertion misapprehends the law, directly conflicts with this Court's discovery order and the findings of fact in support of that order, and is simply not true. It is well-established that evidence does not have to be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b); *Johnson v. Folino*, 705 F.3d 117, 129-30 (3d Cir. 2013) (even inadmissible *Brady* evidence may be material if it "could have led to the discovery of admissible evidence"). As this court already found, "Petitioner has now identified specific items . . . that could show that the Commonwealth withheld information that these witnesses received favorable treatment in exchange for their testimony against Petitioner." Discovery Order at 7.

## VI. CONCLUSION

33. For all of the foregoing reasons, Petitioner respectfully requests the Court grant Petitioner's Motion to Compel and order that Respondents produce the OAG file to Petitioner for his inspection and review. In the alternative, Petitioner requests that the Court direct the Commonwealth to maintain a privilege log pursuant to Rule 26(b)(5) and produce the OAG's file to this Court for *in camera* review for resolution of any privilege determinations. A proposed order accompanies this request.

Respectfully Submitted,


/s/ Tracy Ulstad
TRACY ULSTAD
Pa. Bar No. 87377
JAMES MORENO
Pa. Bar No. 86838
Federal Community Defender Office
      For the Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis Center – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
Counsel for Petitioner


Dated: July 8, 2015
      Philadelphia, Pennsylvania

**PETITIONER'S EXHIBIT A**

# FEDERAL COMMUNITY DEFENDER OFFICE
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *Capital Habeas Unit*

FEDERAL COURT DIVISION DEFENDER ASSOCIATION OF PHILADELPHIA

SUITE 545 WEST -- THE CURTIS CENTER
601 WALNUT STREET
PHILADELPHIA, PA 19106

| | | |
|---|---|---|
| ***ELLEN T. GREENLEE*** | PHONE NUMBER (215) 928-0520 | ***LEIGH M. SKIPPER*** |
| DEFENDER | FAX NUMBER (215) 928-1112 | CHIEF FEDERAL DEFENDER |
| | FAX NUMBER (215) 925-4024 | |
| | FAX NUMBER (215) 928-0822 | |
| | FAX NUMBER (215) 861-3159 | |

February 27, 2015

James P. Barker
Chief Deputy Attorney General
Appeals and Legal Services Section
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

     Re: *Chmiel v. Beard, et al.*, No. 1:06-cv-02098

Dear Mr. Barker:

     I am writing this letter to inform you of the remaining discovery issues that we have identified. I set forth a few general concerns, followed by a list of items we think may be missing and a few outstanding questions we have. This list refers throughout to the paragraphs of our First Set of Interrogatories and Request for Production of Documents.

     We have two general requests that relate to multiple document production responses. First, for all responses indicating there are no documents pertaining to the request, please explain if those documents were ever in your possession or control and if so, what happened to them, as set out in the Definitions and Instructions, ¶¶ F & G.[1] Second, please provide a copy of the letters you sent to the Lackawanna County District Attorney's Office, the Scranton Police Department,

---

[1] Those instructions provide:
          F.     If any document responsive to this request was, but no longer is, in your possession, custody or control, describe each document and indicate the manner and circumstances under which it left your possession, custody, or control and its present whereabouts, if known.
          G.     If any document responsive to this request has been misplaced, discarded, or destroyed, describe each such document and indicate the manner and circumstances under which it was misplaced, discarded, or destroyed, if known, and its last whereabouts, if known.

Throop Police Department and the Pennsylvania State Police Bureau of Records. It is unclear from the responsive letters the extent of your requests. This impacts the requests made in **Requests 3-7, 9,11, 13, 16, 17, 25.**

In response to **Request 1**, you state the Lackawanna County DA's Office was unable to locate the homicide file requested. The Court found good cause for the production of the file of the prosecuting agency for the first trial. It follows that the Court would also find good cause for the prosecution of the Attorney General's homicide file for the second and third trial, which is even more relevant to the issues currently before the Court. Please produce these files. If the Attorney General's office took possession of, received a copy of, or otherwise incorporated portions of the Lackawanna County DA's office homicide file, please produce this file as well.

In response to **Request 2**, you state you do not have any documents from Attorney Kennedy's file, yet Prosecutor Paul Walker possessed a copy of those notes and utilized them to cross examine Attorney Kennedy at the January 27, 1988 PCRA hearing. Please indicate what happened to those notes, as the discovery motion requests.

In response to **Request 3**, you stated you provided all responsive documents. The only documents we received pertained to Martin Chmiel's cooperation in the Lunario homicide prosecution. Our document request was not so limited. Please provide any and all documents regarding Martin Chmiel's cooperation in *any and all cases* involving these agencies, including the Attorney General's Bureau of Narcotics informant file on Martin Chmiel.

In response to **Request 5**, you state you do not have any such documents and suggest that these documents would more likely be in the possession of the federal government. If you[2] referred the mail fraud case to the federal government or prepared any document relating to such possible referral, please provide these responsive documents.

In response to **Request 19**, you state that all responsive documents have been produced. All you produced were police reports that refer to polygraph examinations. Please ask Cpl. Pasquale P. Raico, whom the police report indicates conducted two polygraph examinations in relation to this case, if he conducted any other polygraph examinations or possesses any relevant documents in relation to any of these tests or knows why the agency no longer possesses the documents.

Finally, based on your responses and the documents provided, we have the following questions:

1. Regarding **Request 1**: given that the Lackawanna County District Attorney's Office tried the first trial in 1984 and the Office of Attorney General tried the second and third trials in 1995 and 2002, did the Attorney General's office take possession of, receive a copy of, or otherwise incorporate portions of the Lackawanna County DA's office homicide file for the first trial in 1984?

---

[2] That is, as defined in ¶ C of our first set of interrogatories and document requests.

2. In regard to **Request 5**, did you[3] refer the mail fraud case to the federal government or prepare any internal document relating to such possible referral?

3. In response to **Request 10**, you respond that there are no documents of cases involving both Troopers Carlson or Gaetano and Martin Chmiel, other than the arson and homicide case. How was this determined? Did you ask Troopers Carlson and Gaetano directly about their involvement with Martin Chmiel as a witness, suspect, or informant?

4. Was a separate investigation and/or prosecution commenced based upon the recovery of the unregistered weapon referenced in **Request 13**?

5. In regard to **Request 16**, did you contact the Pennsylvania State Police regarding their communications with State Farm Insurance Company as to Thomas Buffton's repayment of insurance monies?

6. In regard to **Request 17**, did you contact ADA Lawrence Moran, who testified about Thomas Buffton's history of cooperation?

7. In regard to **Request 19**, did you contact Cpl. Pasquale P. Raico regarding any polygraphs conducted in relation to this homicide investigation?

8. In response to **Request 24**, you say policies and procedures related to hair analysis prior to 1999 have not been archived. Are there any employees working at the lab who might have knowledge of these procedures, even if not written down? Is there any other way to determine if the lab was ASCLAD accredited at the time?

9. In response to **Request 22**, you provided a number of documents. Do these documents compromise Dr. Surma's complete file?

Please kindly provide supplemental responses to our document requests and further questions as soon as possible, but no later than March 16, 2015, so that we can comply with the court's schedule. If you have any questions, please do not hesitate to contact us. Also, if you feel additional time will be needed, please let us know and we can file an additional continuance request. Thank you for your continued cooperation.

Yours truly,

Tracy Ulstad

---

[3] *See* note 2 above.

**PETITIONER'S EXHIBIT B**



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

KATHLEEN G. KANE
ATTORNEY GENERAL

April 2, 2015

APPEALS AND LEGAL SERVICES SECTION
16th Floor, Strawberry Square
Harrisburg, PA 17120
(Tele) 717-787-6348
(Fax) 717-783-5431

Tracy Ulstad, Esquire
Federal Community Defender for the
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 W
Philadelphia, PA 19106

      RE: Chmiel v. Beard, et al., No. 1:06-cv-02098

Dear Ms. Ulstad:

      This letter is sent in response to your February 27, 2015 letter to Chief Deputy Attorney General James P. Barker regarding remaining discovery issues. On March 12, 2015, I informed you that additional files had been located in the State Records Center and requested additional time to respond. You responded on that date, by email, indicating that you would file a joint request for additional time to complete discovery.

      We have received and reviewed the additional files. Several responsive documents were located and are attached as the Respondents' third production of documents. This production contains documents Bates stamped 2464-2508. Please contact us immediately if you did not receive any of those numbered pages.

      As to your February 27, 2015 letter, we will first address the two general requests listed in paragraph two of your letter. First, for the document requests that we were unable to locate responsive documents, you ask whether the documents were ever in our possession or control and, if so, what happened to them. Our files do not reflect whether we possessed the requested documents or what may have happened to them. Second, you request copies of the letters we sent to various law enforcement and prosecutorial agencies requesting responsive documents. These letters are not discoverable and will not be provided. Respondents represent that appropriate requests were made of the listed agencies, and copies of both your discovery request and the Court's order were provided.

      We will now address the issues you raise related to specific requests.

Regarding Respondents' response to Request 1, you request copies of the Office of Attorney General (OAG) prosecution files for the second and third trial. This request must be denied. Criminal defendants are not entitled to unfettered access to prosecution files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987); *see also Commonwealth v. Williams*, 732 A.2d 1167, 1175-76 (Pa. 1999) ("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance."). Therefore, Respondents will not be providing copies of the prosecution files.[1]

Regarding Respondents' response to Request 2, you ask what happened to Attorney Kennedy's notes referenced during his testimony at the January 27, 1998, PCHA hearing. A review of the PCHA hearing testimony reveals that your request mischaracterizes the record. Attorney Kennedy was called as a Commonwealth witness at that hearing. During his testimony, he referred to his notes. The following discussion between Chmiel's counsel, Terrence V. Gallagher, and the court took place:

> Mr. Gallagher: Your honor, at this time, I'm going to ask if he's going to testify directly from the notes, that the notes be marked, or he can refer to the notes to refresh his recollection, whichever way he wishes.

> The Court: No. The objection is overruled. You can certainly see the notes, Mr. Gallagher.

NT 1/27/88 at 458. Despite your assertion that "the court ruled that the Commonwealth could review the notes," the court actually ruled that Mr. Chmiel's attorney could review the notes. Therefore, the notes are not in Respondents' possession.

Regarding Respondents' response to Request 3, you state that the only documents you received related to Martin Chmiel's cooperation in the murder of Angelina, James, and Victor Lunario. You request documents related to Martin Chmiel's cooperation with the Lackawanna County District Attorney's Office, the Scranton Police Department, the Throop Police Department, and the Pennsylvania State Police. You also request documents related to Martin Chmiel's status as an informant for the OAG Bureau of Narcotics Investigation (BNI). First, included in the documents provided as part of the third production, you will find a November 3, 1983 letter from Captain Frank Roche of the Scranton Police Department to Assistant District Attorney William Fisher forwarding information Martin Chmiel provided about David Chmiel's involvement in his rape case. The documents provided, relating to Martin Chmiel's cooperation in the Lunario murders and the rape case, are the only responsive documents located. The file does not reflect whether any additional documents were ever in our possession or control.[2]

Regarding Respondents' response to Request 5, you request any documents related to any mail fraud referral made to federal authorities. We have no record of any such referral.

[1] You also ask that any files obtained from the Lackawanna District Attorney's Office be provided. The file does not reflect whether any files were provided by the DA's Office to the OAG. However, it is common for files to be provided upon referral, and those files are usually incorporated into the OAG's file. Any files provided by the Lackawanna DA were likely incorporated into the OAG file and determination of which files originated from the DA would be impractical.

[2] No record of Martin Chmiel serving as an informant for the OAG Bureau of Narcotics Investigation has been located.

Regarding Respondents' response to Request 19, you request that we ask Corporal Pasquale P. Raico if he conducted any other polygraph examinations, if he possess any relevant documents, or if he knows why the documents are no longer in the agency's possession. This request must be denied. You may contact Corporal Raico as part of your investigative efforts.

Finally, we will address the questions you pose on pages two and three of your letter.

Regarding Request 1, you ask if the OAG ever obtained the Lackawanna County DA's Office file, and, if so, was it incorporated into the OAG file. As explained in footnote 1 *supra*, the file does not reflect whether the OAG obtained the DA's Office file.

Regarding Request 5, you ask if a referral was made to federal authorities relating to mail fraud. As explained above, we have no record of any referral.

Regarding Request 13, you ask if a separate investigation and/or prosecution were conducted relating to the recovery of the unregistered weapon referenced in Request 13. The file does not reflect any separate investigation or prosecution related to the weapon.

Regarding Request 16, you ask if Respondents contacted the Pennsylvania State Police regarding communications with State Farm Insurance regarding repayments by Thomas Bufton. The Pennsylvania State Police were contacted and were unable to locate any records related to such communication.

Regarding Request 17, you ask if Respondents contacted ADA Lawrence Moran. Mr. Moran was not contacted. Your request was for the production of documents. You may contact Mr. Moran as part of your investigative efforts.

Regarding Request 19, you ask if Respondents contacted Corporal Pasquale P. Raico. Corporal Raico was not contacted. Your request was for the production of documents. You may contact Corporal Raico as part of your investigative efforts.

Regarding Request 24, you ask if there are any employees working at the State Police Crime Lab who might have knowledge about the requested procedures and if there is any way to determine if the lab was ASCLAD accredited at the time. We are not aware of any employees with such knowledge or a means to determine if the lab was accredited.

Regarding Request 22, you ask if the documents provided from Dr. George Surma's file comprise his entire file. Respondents are unaware of any additional documents.

Sincerely,

Philip M. McCarthy
Deputy Attorney General

**PETITIONER'S EXHIBIT C**

# FEDERAL COMMUNITY DEFENDER OFFICE
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## *Capital Habeas Unit*

### FEDERAL COURT DIVISION DEFENDER ASSOCIATION OF PHILADELPHIA

SUITE 545 WEST -- THE CURTIS CENTER
601 WALNUT STREET
PHILADELPHIA, PA 19106

| | | | |
|---|---|---|---|
| ***CHARLES A. CUNNINGHAM*** | PHONE NUMBER | (215) 928-0520 | ***LEIGH M. SKIPPER*** |
| ACTING DEFENDER | FAX NUMBER | (215) 928-0826 | CHIEF FEDERAL DEFENDER |
| | FAX NUMBER | (215) 928-3508 | |

April 16, 2015

Philip M. McCarthy
Deputy Attorney General
Appeals and Legal Services Section
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

     Re: *Chmiel v. Beard et al.*, No. 1:06-cv-02098

Dear Mr. McCarthy:

     I am writing in response to your letter of April 2, 2015. I want to verify receipt of the documents Bates stamped 2464-2508 and address your refusal to provide certain requested documents.

     In response to Request 1, you refused to provide copies of the Attorney General's files for the prosecution of the second and third trial ("OAG file"). The Court has already determined that there was good cause for the production of the prosecutor's file. To the extent there is "good cause" for the Lackawanna County District Attorney's file from the first trial, there is even better cause to have the OAG file from the trial at issue in the current litigation. You now refuse to turn over the OAG's file citing to the proposition that "criminal defendants are not entitled to unfettered access to prosecution files," yet you did not previously oppose Petitioner's request for the Lackawanna County DA's file.[1]

---

[1] In any case, your citations to *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) and *Commonwealth v. Williams*, 732 A.2d 1167, 1175-76 (Pa. 1999), are inapposite. In those cases, no court had found relevance, let alone "good cause," for the production of the files. Here, your office refuses discovery of these prosecution files after a court has found "good cause" for the production and established a court-supervised discovery process.

Furthermore, you (1) concede that your office cannot determine if it received the Lackawanna County DA's file, (2) state that, if it did receive the Lackawanna County DA's file, your office "likely incorporated" it into the OAG file, and (3) claim that it would now be "impractical" to separate out the two. In other words, based on your statements, there is a reasonable basis to believe that the contents of your file contain the Lackawanna County DA's file. This further shows why the OAG file is subject to disclosure in response to Petitioner's Request 1.

In response to Request 2, you correctly point out that the Commonwealth presented Attorney Kennedy with his own trial notes during direct examination, not during cross-examination, as I had said. You are correct. Yet you are mistaken in asserting that due to this error, it follows that the notes are not in Respondent's possession. In fact, it is just the opposite. Your correction only makes it more certain that the prosecutor had a copy of the notes and used them to examine Attorney Kennedy during the PCRA proceedings. Please produce these notes or provide an explanation as to what happened to them.

You refuse to contact specific named individuals to see if they have a copy of specific documents Petitioner requested in his Request for Production of Documents and this Court required you to turn over pursuant to its September 24, 2014 Order. Request 16 requires you to turn over any documents relating to the repayment of insurance monies to State Farm Insurance, yet you refuse to contact the PSP -- who prosecuted this arson case and were admittedly in contact with State Farm -- about any documents they possess. Request 17 requires you to turn over all documents relating to Thomas Buffton's cooperation with the government in any prosecution, yet you refuse to contact ADA Moran -- who testified that he was familiar with Buffton's history of cooperating. Request 19 requires you to turn over all documents relating to polygraph examinations conducted in this case, yet you refuse to contact the person who is known to have conducted two such polygraphs -- Corporal Raico. Making a request for such documents from the above-named individuals makes logical sense. We will pursue other avenues of investigation and discovery to obtain this information.

Finally, in your first production of documents, you provided a copy of the Pennsylvania State Police report for this case. However, you did not provide a copy of any of the documents cited in that report as being attached. As your production suggests, the report was responsive; so too are the omitted documents.

Please kindly notify Petitioner of your final intentions with regard to Petitioner's renewed request that you 1) turn over the OAG files for the second and third trials, 2) look for Attorney Kennedy's notes, 3) contact the PSP, ADA Moran, and Corporal Raico regarding Requests 16, 17, and 19, and 4) produce a copy of attached documents that are mentioned in the PSP report previously provided. If possible, please provide this notice prior to April 22, 2015 - the date we are expected to resolve discovery issue pursuant to the Court's order.

Your truly,

Tracy Ulstad

**PETITIONER'S EXHIBIT D**

| 2. INCIDENT-NO. | R1-93332 |
|---|---|

| 1. STATION | Dunmore | CODE | 3710 | 3. OTH/NON - TRAP CIT NO. |
|---|---|---|---|---|

| 4. OFFENSE | 5. NAME OF VICTIM | 6. DATE OF INCIDENT |
|---|---|---|
| ARSON | Thomas Harold BUFFTON | 24 Jul 83 |

| 7. TYPE REPORT SUPPLEMENTED | 8. NEW OFFENSE IF CHANGED | 9. VALUE RECOVERED PROP. |
|---|---|---|
| ☒ INITIAL CRIME   ☐ VEHICLE | | |

| 10. STATUS | 11. FURTHER ACTION & REPORT REQUIRED | 12. MULTIPLE CLEAR - UP? |
|---|---|---|
| ☐ CLEARED   ☐ UNFOUNDED   ☐ NOT CLEARED | ☒ YES   ☐ NO | ☐ YES (LIST OTHER INCIDENT NOS. IN NARRATIVE)   ☐ NO |

| 13. | NAME (LAST - FIRST - MIDDLE) | | ADDRESS | | | ZIP CODE |
|---|---|---|---|---|---|---|
| ☐ ACCUSED | SSN — | BIRTHPLACE (CITY-STATE) | | DOB | AGE | RACE   SEX |
| | HEIGHT   WEIGHT | HAIR   EYES | NICKNAME/ALIAS | | | MARITAL STATUS |
| ☐ SUSPECT | EMPLOYER SCHOOL OR NAME & ADDRESS | | | | 14. FINGERPRINTED ☐ YES   ☐ NO | |
| | | | | | 15. PHOTOGRAPHED ☐ YES   ☐ NO | |

16. NARRATIVE: IN FOLLOW-UP USAGE, RECORD ALL DEVELOPMENTS SUBSEQUENT TO LAST REPORT. INCLUDE VALUE AND DISPOSITION OF RECOVERED PROPERTY (ATTACH PROPERTY RECORD), AND EXPLAIN ANY CHANGE IN OFFENSE. LIST ADDITIONAL ACCUSED/SUSPECT AS FIRST ITEM - INCLUDE DATA REQUIRED IN BLOCKS 13, 14, & 15.

ADDITIONAL ACCUSED/SUSPECT

1 Feb 84

This date this officer met with Lacka. County D.A. Ernie PREATE and he recommended that the felony 2 section of the Arson charge be used rather than the felony 1 section. At this time the D.A. approved the Affidavit of Probable Cause for Arrest Warrant along with the Criminal Complaints against all three suspects.

This date this officer obtained a copy of the Scranton Fire Dept. reports regarding this fire, from the D.A. office. These fire reports are attached to the station copy of this report.

A copy of the Affidavit of Probable Cause for Arrest Warrant (which has a copy of the CIMIEL statement attached to it) is appended to the station copy of this report.

The Criminal Complaints will be filed at a later date.

| 17. PAGE NO. | 18. SIGNATURE | BADGE NO. | 19. DATE OF REPORT | 20. SUPV. INITIALS & BADGE NO. |
|---|---|---|---|---|
| 7 | PRINT/TYPE NAME OF REPORTING OFFICER Tpr. Walter MOSCHOWSKY | 561 | 1 Feb 84 | |

FEB 3 1984

**PETITIONER'S EXHIBIT E**

PENNSYLVANIA STATE POLICE
**SUPPLEMENT REPORT**

| | | |
|---|---|---|
| 1. STATION Dunmore CODE 3310 | 2. INCIDENT NO. FO-93332 | |
| | 3. OTH/NON-TRAF CIT NO. | |
| 4. OFFENSE ARSON | 5. NAME OF VICTIM Thomas Harold HUFFTON | 6. DATE OF INCIDENT 24 Jul 83 |
| 7. TYPE REPORT SUPPLEMENTED ☒ INITIAL CRIME ☐ VEHICLE | 8. NEW OFFENSE IF CHANGED | 9. VALUE RECOVERED PROP. |
| 10. STATUS ☐ CLEARED ☐ UNFOUNDED ☒ NOT CLEARED | 11. FURTHER ACTION & REPORT REQUIRED ☒ YES ☐ NO | 12. MULTIPLE CLEAR-UP? ☐ YES (LIST OTHER INCIDENT NOS. IN NARRATIVE) ☐ NO |

13.

| | NAME (LAST - FIRST - MIDDLE) | ADDRESS | | ZIP CODE |
|---|---|---|---|---|
| ☐ ACCUSED | SSN — — | BIRTHPLACE (CITY-STATE) | DOB | AGE | RACE | SEX |
| | HEIGHT | WEIGHT | HAIR | EYES | NICKNAME/ALIAS | MARITAL STATUS |
| ☐ SUSPECT | EMPLOYER SCHOOL OR NAME & ADDRESS | | 14. FINGERPRINTED ☐ YES ☐ NO |
| | | | 15. PHOTOGRAPHED ☐ YES ☐ NO |

16. NARRATIVE: IN FOLLOW-UP USAGE, RECORD ALL DEVELOPMENTS SUBSEQUENT TO LAST REPORT. INCLUDE VALUE AND DISPOSITION OF RECOVERED PROPERTY (ATTACH PROPERTY RECORD) AND EXPLAIN ANY CHANGE IN OFFENSE. LIST ADDITIONAL ACCUSED/SUSPECT AS FIRST ITEM - INCLUDE DATA REQUIRED IN BLOCKS 13, 14, & 15.

ADDITIONAL ACCUSED/SUSPECT

23 Feb 84

This date this officer appeared before District Magistrate Eugene T. CADDEN, 2302 Railroad Ave., Scranton, Pa. and filed an Affidavit of Probable Cause for Arrest Warrant and two Criminal Complaints against suspect Thomas Harold HUFFTON and suspect Martin Andrew CHMIEL. HUFFTON was charged with Arson and Criminal Solicitation to commit Arson and CHMIEL was charged with Arson, Criminal Mischief, and Criminal Conspiracy to commit Arson.

In discussing this case with Lacka. County D.A. Ernest PREATE, it was decided by him that the suspect Nancy HUFFTON would not be charged with any crimes regarding this fire. Atty. PREATE's decision is based on the facts of another investigation involving the suspects of this fire investigation.

Another face sheet of the Affidavit of Probable Cause for Arrest Warrant was made up by this officer, removing Nancy HUFFTON, and filed this date. A copy of this face sheet of the Affidavit is attached to the station copy of this report. The original face sheet was never filed, however, it was made a part of this report (station copy).

| 17. PAGE NO. 8 | 18. SIGNATURE [signature] BADGE NO. 561 | 19. DATE OF REPORT 23 Feb 84 | 20. SUPV. INITIALS BADGE NO. [initials] |
|---|---|---|---|
| | PRINT/TYPE NAME OF REPORTING OFFICER Tpr. Walter MOSCHONSKY | | |

**CERTIFICATE OF SERVICE**

I, Tracy Ulstad, hereby certify that on this 8th day of July, 2015, a copy of the foregoing

documents was served by electronic filings upon the following:

Phillip McCarthy, Esq.
Deputy Attorney General
Pennsylvania Office fo the Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Tracy Ulstad
Tracy Ulstad

## VERIFICATION

The undersigned certifies the facts set forth in the instant pleading are true and correct to the best of my knowledge, information, and belief, subject to the provisions of 18 Pa. Cons. Stat. § 4904.

/s/ Tracy Ulstad
Tracy Ulstad