IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID CHMIEL, | Judge Kane |
| Petitioner, | No. 1:06-CV-02098 |
| v. | **THIS IS A CAPITAL CASE** |
| JOHN E. WETZEL, Commissioner, et al., | |
| Respondents. | |

BRIEF IN SUPPORT OF
PETITIONER'S SECOND MOTION TO COMPEL DISCOVERY

TRACY ULSTAD
JAMES MORENO
Federal Community Defender Office
    for the Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis Center – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106

Counsel for Petitioner

Dated: May 5, 2017
        Philadelphia, Pennsylvania

Petitioner, David Chmiel, through undersigned counsel, hereby moves this Court to compel Respondents to comply with the Court's orders dated September 24, 2014 ("Discovery Order") (ECF No. 69) and March 7, 2016 (ECF No. 99). In support thereof, Petitioner states the following:

1. On September 24, 2014, this Court granted Petitioner's motion for discovery, found good cause for Petitioner's request, and ordered Respondents to answer Petitioner's interrogatories and produce all requested documents including the Lackawanna County District Attorney's file, by October 24, 2014. Order, Sept. 24, 2014, ECF No. 69. This Court found production of those documents "fundamental" to proving violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), as pleaded in Claim II.A of Mr. Chmiel's Petition for Writ of Habeas Corpus ("Petition"). Following a dispute about the Respondents' duty to produce the Office of the Attorney General's file (OAG file) under the order, Petitioner moved to compel production of those documents pursuant to Federal Rule of Civil Procedure 37. Mot. to Compel, ECF No. 88.

2. This Court compelled Respondents to produce the entire file for Petitioner's inspection and review and ordered Respondents to produce a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5) as to any documents included in the OAG file over which Respondents asserted a privilege. Order at 8, Mar. 7, 2016, ECF No. 99.

3. Respondents have asserted privilege over numerous documents that Petitioner has reason to believe are essential to proving his *Brady* and *Napue* claims. In light of the constitutional mandate for disclosure, Petitioner now requests that this Court find that Petitioner has shown a substantial need for relevant documents on which Respondents assert privilege. In

the alternative, Petitioner requests that this Court make an *in camera* inspection of the documents over which privilege is asserted to determine whether they should be produced to Petitioner.

## PROCEDURAL HISTORY & STATEMENT OF FACTS

4. Petitioner, David Chmiel, is in the custody of the Commonwealth of Pennsylvania in the State Correctional Institution at Greene, under a sentence of death.

5. Petitioner filed his Petition on May 18, 2012 (ECF No. 32) and a Memorandum of Law on December 14, 2012 (ECF No. 45), which are currently pending before this Court.

6. On September 25, 2013, Petitioner filed a Motion for Discovery and Consolidated Brief in Support ("Discovery Motion") (ECF No. 53) and a First Set of Interrogatories and Requests for Production of Documents ("Interrogatories and Requests") (ECF No. 53-2). The first requested documents were "any and all documents in the Lackawanna County District Attorney's file for this case, including but not limited to documents regarding favorable treatment offered to or received by Commonwealth witnesses in exchange for their testimony against Mr. Chmiel." *See* Interrogatories and Requests at 5. As set forth in Petitioner's Discovery Motion, this request sought information in support of *Brady* and *Napue* violations alleged in Claim II.A of Mr. Chmiel's Petition. *See* Discovery Motion ¶¶ 7-15.

7. On September 24, 2014, this Court found good cause for Petitioner's discovery requests, granted Petitioner's motion, and ordered Respondents to answer Petitioner's interrogatories and produce all requested documents including the Lackawanna County District Attorney's file, by October 24, 2014. Discovery Order at 7.

8. Respondents made initial and supplemental productions of documents in response to the Discovery Order. *See* ECF Nos. 70, 72.

9. On April 2, 2015, Respondents provided additional documents and responses to interrogatories, but refused to comply with a number of Petitioner's requests, including

Petitioner's request for production of the OAG's file. *See* Exh. B & C, Mot. to Compel, ECF No. 88 (letters from Respondents' counsel Phillip McCarthy).

10. Petitioner moved to compel production of those documents pursuant to Federal Rule of Civil Procedure 37. ECF No. 88.

11. On March 7, 2016, this Court compelled Respondents to produce the entire file for Petitioner's inspection and review and ordered Respondents to produce a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5) as to any documents included in the OAG file over which Respondents asserted a privilege. Order, Mar. 7, 2016, ECF No. 99.

12. Respondents asserted privilege over numerous documents contained in the OAG file and, on May 16, 2016, produced a 42-page privilege log. ECF No. 102.

13. Respondents prepared the OAG file for inspection. Counsel for Petitioner reviewed the OAG file on June 7, 2016. *See* Joint Notice of Status of Discovery, ECF No. 104. Respondents provided Petitioner with a copy of all paper documents flagged by Petitioner and later provided copies of audio files Petitioner requested. ECF No. 106.

14. After reviewing the documents, Petitioner sought clarification as to a number of items on Respondent's privilege log. *See* January 18, 2017 letter from Ms. Ulstad to Mr. McCarthy (Attached as Exhibit A). Among other information, Petitioner requested clarification as to the identity of any witness or witnesses who were not otherwise mentioned by name in Respondents' log. *Id.*

15. On March 6, 2017, Respondents disclosed that a number of the entries Petitioner inquired about discussed a Commonwealth witness or witnesses, but they did not disclose the names of these witnesses. Respondents maintained that all other items were adequately

described to indicate why they were privileged.  *See* March 6, 2017 letter from Mr. McCarthy to Ms. Ulstad (Attached as Exhibit B).

**QUESTIONS INVOLVED**

16. This motion presents two issues:

Whether Respondents have waived their assertion of the work-product privilege.

Whether this Court should compel production—or, in the alternative, order *in camera* inspection—of certain documents contained in the Attorney General's file that Petitioner has reason to believe may support his claims for relief under *Brady* and *Napue*, over which Respondents assert privilege.

**ARGUMENT**

17. Respondents assert a single basis for withholding documents within the OAG file—including documents pertaining to Martin Chmiel, Thomas Buffton and Nancy Moran: the attorney work-product privilege.  First, Respondents' assertion of the attorney work-product privilege is waived because the assertion was long-delayed and, with respect to certain documents, inadequate to apprise Petitioner or the Court of the reason for the privilege.  Second, the assertion of privilege over certain enumerated documents is unavailing for a simple reason: *Brady* and *Napue* concern disclosure of information that only the prosecution has, and mandates the disclosure of that information in the prosecutor's possession even if—and often precisely because—the information is privileged.

18. Where petitioner has already established good cause for discovery on a claim alleging the prosecution's non-disclosure of exculpatory evidence in violation of the Constitution, assertions of a common-law privilege must yield to the vindication of this constitutional right.  Petitioner has already demonstrated good cause for the production of the contents of the OAG file.  Noting the importance of Thomas Buffton and Martin Chmiel to the Commonwealth's case and the specific items Petitioner identified that could show these

witnesses received favorable treatment in exchange for their testimony, this Court specifically found "the discovery requests relating to Claim II.A. . . . fundamental to the claim." Discovery Order at 7.

19. Following review of Respondents' privilege log, Petitioner seeks production of certain documents over which Respondents assert privilege that are most likely to contain information relevant to proving Petitioner's Claim II.A. Petitioner also seeks production of those documents over which Respondents have provided inadequate information to assess the assertion of privilege. These documents are listed in the table attached as Exhibit C. In the alternative, Petitioner asks this Court to conduct an *in camera* inspection of these select documents to determine whether they contain material that must be disclosed.

## I. RESPONDENTS WAIVED ANY ASSERTION OF WORK PRODUCT PRIVILEGE.

20. Respondents waived any assertion of work-product privilege by failing to assert it in the manner set out by the Federal Rules:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Failing to provide such notice "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26 cmt. (1993 Amendments).

21. Because Respondents waited to "expressly make" a claim of privilege until its "supplemental response" to the Court, almost seven months after this Court issued its Discovery

Order and nearly two years after its first response to Petitioner's Discovery Motion, Respondents' assertion should be deemed waived.

22. Additionally, when Respondents finally did assert the privilege, they failed to adequately describe the nature of the documents they chose not to disclose. Even after Petitioner specifically requested the names of the Commonwealth witnesses discussed in certain log entries to determine if those entries pertained to Martin Chmiel, Thomas Bufton or Nancy Moran (aka Nancy Chmiel and Nancy Bufton) – and thus were relevant to Petitioner's *Brady* and *Napue* claims, *see* Exhibit A, Respondents refused to provide it, *see* Exhibit B. Any privilege is waived with respect to at least those documents for which Respondents have refused to clarify the nature of the assertion of privilege.

## II. THE CONSTITUTIONAL DUTY TO DISCLOSE *BRADY* EVIDENCE MANDATES PRODUCTION OF PRIVILEGED DOCUMENTS TO PETITIONER.

23. "The privilege derived from the work-product doctrine is not absolute." *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). It is an "intensely practical" doctrine, whose scope reflects society's interest in "the proper functioning of the criminal justice system." *Id.* at 238.

24. A uniform federal standard governs the work-product privilege. Fed. R. Civ. P. 26(b)(3); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under that standard, a party may discover documents created in anticipation of litigation if it "shows that it has a substantial need for the materials to prepare its case" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Where a court orders production of those materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(B).

### A. Mr. Chmiel has shown a substantial need for the privileged materials.

25. In finding that Petitioner has shown good cause to obtain the Lackawanna County D.A.'s file and compelling production of the Attorney General's file, this Court has already found that Petitioner has a substantial need for the contents of that file to assist in the preparation of his capital habeas case. As the Court found: "the discovery requests relating to Claim IIA [are] fundamental to the claim." Discovery Order at 7. Claim II.A raises claims of *Brady* and *Napue* violations involving two central Commonwealth witnesses: Martin Chmiel and Thomas Buffton, in addition to Buffton's then-wife, Nancy Moran. Consequently, Petitioner has shown a substantial need to obtain access to the documents in the OAG's file pertaining to these witnesses to enable Petitioner to prove his allegations of constitutional error—including *Brady* and *Napue* violations. *See* Habeas Petition, Claim IIA.

26. Moreover, in Petitioner's case, the work-product doctrine must conform to the compelling interest in vindication of a criminal defendant's constitutional rights. "Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, the work-product immunity for discovery . . . does not alter the prosecutor's duty to disclose material that is within *Brady*." 2 Charles Alan Wright et al., *Federal Practice and Procedure* § 256 (4th ed. 2017 update), *quoted in Dickson v. Quarterman*, 462 F.3d 470, 480 n.7 (5th Cir. 2006). The work-product privilege cannot supersede the prosecutor's constitutional obligations under *Brady v. Maryland*, and its progeny, to disclose exculpatory evidence that is favorable to the defense. *Mincey v. Head*, 206 F.3d 1106, 1133 (11th Cir. 2000).[1] As a result, the work-product doctrine

---

[1] *See also Castleberry v. Crisp,* 414 F. Supp. 945, 953 (N.D. Okla. 1976) ("[T]he 'work product' discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in *Brady*."); *see also United States v. NYNEX Corp.,* 781 F. Supp. 19, 25 (D.D.C.1991) ("Cases on this question, albeit without much discussion, suggest that

does not insulate discovery of attorney work product (including mental impressions) that provides evidence of, and may itself embody, a constitutional violation. A prosecutor may not hide behind a claim of work-product privilege when his or her file contains *Brady* type materials, or when the prosecutor has placed putatively privileged materials in issue. Therefore, while it may be true that *Brady* itself does not operate as a rule of discovery, its constitutional mandate alters the balance of interests that underlie the qualified work-product privilege.

27. Indeed, discovery on a *Brady* claim uniquely places at issue a prosecutor's work product. *Brady* therefore gives rise to a substantial need for the material. As one district judge put it:

> A theme running through these issues, to use the vernacular of recent history, is "what did the government know, and when did it know it?" Where the activities of counsel in the underlying proceeding form the very basis of a present claim for relief, courts routinely "find the need for production of counsel's work product compelling."

*Harris v. United States*, No. 97 Civ. 1904, 1998 WL 26187, at *2 (S.D.N.Y. 1998) (citation omitted); *see also Roberts v. Warden, San Quentin State Prison*, No. CIV S-93-0254 GEB, 2012 WL 5523430, at *4 (E.D. Cal. Nov. 14, 2012) (documents about prosecutor's mental impressions "may very well be the best evidence of what [the prosecutor] knew about his witnesses or should have known and when he knew it or should have known it.").

---

internal materials possibly constituting work product may not automatically be exempt from *Brady* requirements.") (citing cases); *United States v. Goldman,* 439 F.Supp. 337, 350 (S.D.N.Y.1977) ("Of course, if [work product] material be of a *Brady* nature, then it must be produced."); *Franklin v. State,* 166 Ga.App. 375, 304 S.E.2d 501, 504 (1983) ("[W]ork product of the state [is] not subject to compelled discovery except to the extent that such letter may be exculpatory and subject to disclosure under *Brady*." (citation omitted)).

9

### B. Mr. Chmiel cannot obtain these documents by other means.

28. Petitioner is unable to obtain the substantial equivalent of the privileged contents of the OAG file by other means. These documents listed on the privilege log are in the sole possession of Respondents

29. Courts have ordered the disclosure of prosecutor's files, or portions of those files relating to *Brady* assertions or certain government witnesses, in a number of different cases. *See Commonwealth v. Ramon Sanchez*, No. 3652 of 2001 (Lehigh Cnty. C.C.P. July 3, 2010) (ordered disclosure of portions of DA's file relating to witnesses, statements made, deals provided and allegations of sexual abuse); *Breakiron v. Horn*, 00-cv-300, 2008 WL 4412057 at *23, *31 (W.D. Pa. Sept. 24, 2008) (noting prior order granting *Brady* discovery including documents in prosecutor's file, and granting relief on resulting *Brady* claim); *D'Amato v. Beard*, No. 05-cv-2019 (E.D. Pa. Nov. 9, 2006) (ordering *Brady* discovery including materials in police and prosecution files); *Commonwealth v. Terry Williams*, CP-51-CR-0823621-1994 (Phila. Cnty. C.C.P. Sept. 8, 2012) (entire DA file turned over for two murder prosecutions, with exception of jury selection notes which were reviewed in-camera).

30. Due to Petitioner's substantial need to investigate and develop his *Brady* claim—as this Court has already recognized in granting discovery and ordering production—and his inability to obtain that information from any other source, this Court should fashion a similar order in Petitioner's case—ordering Respondents to provide Petitioner with a copy of all documents in the privilege log relevant to Petitioner's *Brady* claim and Commonwealth witnesses' Martin Chmiel and Thomas Buffton, as well as Buffton's then-wife Nancy Moran. *See* Exhibit C.

### C. This Court may inspect *in camera* the materials over which Respondents assert privilege and which Petitioner has good reason to believe are essential to proving his claims.

31. At the very least, Respondents should be ordered to provide all documents relevant to Petitioner's *Brady* claim and the above-named Commonwealth witnesses to this Court for an *in camera* review to determine whether they should be produced.

32. *In camera* review by this Court is a second-best option for determining what documents should be produced. *United States v. Cuthbertson*, 651 F.2d 189, 198 (3d Cir. 1981) ("When a privilege claim arises, a district court may utilize the *in camera* device."). It may be a way to strike a balance between this Court's order for discovery related to Petitioner's *Brady* and *Napue* claim while protecting the Commonwealth's interest in shielding privileged information not irrelevant to that claim. *Cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60 (1987) (approving pre-trial *in camera* review procedure for disclosure of youth records to ensure fair trial). Still, this procedure deprives the discovery process of "the eye of an advocate [which] may be helpful to a defendant in ferreting out information." *Id.* at 59. If this Court determines that the records contain information that is "discoverable"—that is, information "relevant" to Petitioner's Claim II.A.—then the Court should order the information produced. *See* Fed. R. Civ. P. 26(b)(1), (b)(4).

33. The history of this case highlights the need for *in camera* review of purportedly privileged portions of the OAG file relevant to Petitioner's *Brady* claim. This case involves over a decade of nondisclosure of vital *Brady* information and an initial blanket claim of privilege as to the entire OAG file for this case (ECF No. 83). Only after this Court compelled production did Respondents make available over thirty boxes of non-privileged materials for Petitioner to review.

34. As this Court knows, Petitioner has litigated *Brady* and *Napue* claims involving Martin Chmiel, Thomas Buffton, and Nancy Moran for over a decade, in both state and federal court. However, it was not until this Court ordered discovery during federal habeas proceedings, that the Commonwealth turned over documents directly substantiating *Brady* claims Petitioner had been actively litigating. This recently disclosed evidence shows that in exchange for their cooperation in Petitioner's case, Commonwealth witnesses Thomas Buffton and Martin Chmiel received undisclosed benefits. First, Ernest Preate, the Lackawanna County District Attorney prosecuting Petitioner, spoke to arson investigators and ensured that Martin and Buffton were charged with Felony 2 Arson, rather than Felony 1 Arson. *See* ECF No. 88 (Motion to Compel Discovery, Exhibit D). Second, Preate ordered that Nancy Buffton, Thomas Buffton's then-wife, who according to all accounts was involved in the planning and implementation of this arson, not be charged with any criminal activity related to the fire. *See* ECF No. 88 (Motion to Compel Discovery, Exhibit E). As a result of Mr. Preate's decision, Nancy's name was removed from the fact sheet of the Affidavit of Probable Cause for Arrest Warrant. *Id.* During state and federal court litigation, the Commonwealth repeatedly asserted that Thomas Buffton and Martin Chmiel did not receive any benefits for their testimony, assertions that are contradicted by these newly provided documents.

35. Given this history, recognizing that the work product privilege is not absolute and that this Court's discovery order relates to Petitioner's *Brady* and *Napue* claims involving Martin Chmiel, Thomas Bufton, and Nancy Moran, Petitioner requests this Court order Respondents to provide to Petitioner, or in the alternative to this Court for in camera review, any and all items on the Respondents' privilege log relating to these witnesses. Specifically, Petitioner requests this Court issue an order requiring Respondents to disclose the enumerated items from Respondents'

privilege log (attached as Exhibit C)[2] to Petitioner or in the alternative to this Court for *in camera* review.

## III.   CONCLUSION

36.    For all of the foregoing reasons, Petitioner respectfully requests the Court grant Petitioner's Motion to Compel and order that Respondents produce the above-requested items to Petitioner for inspection and review.  In the alternative, Petitioner requests that the Court order Respondents to produce the same items for *in camera* review by this Court and for resolution of any privilege determination.  A proposed order accompanies this request.

Respectfully Submitted,

/s/ Tracy Ulstad_____
TRACY ULSTAD
Pa. Bar No. 87377
JAMES MORENO
Pa. Bar No. 86838
Federal Community Defender Office
    for the Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis Center – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
Counsel for Petitioner

Dated:  May 5, 2017
       Philadelphia, Pennsylvania

---

[2] Petitioner has determined from the description provided or by cross referencing the Pennsylvania State Police report of the notes of testimony, that the highlighted items are relevant to Petitioner's *Brady* claim and/or relate to Commonwealth witnesses Martin Chmiel and Thomas Buffton, as well as Buffton's ex-wife Nancy Moran.

**CERTIFICATE OF SERVICE**

I, Tracy Ulstad, hereby certify that on this 5th day of May, 2017, a copy of the foregoing documents was served by electronic filings upon the following:

Phillip McCarthy, Esq.
Deputy Attorney General
Pennsylvania Office fo the Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Tracy Ulstad_____
Tracy Ulstad